(No. 75-CC-1177—

FARRON FORBECK et al., Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 14, 1980.*

DAVID HASKINS, for Claimants.

WILLIAM J. SCOTT, Attorney General (SAUL R. WEXLER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This matter comes before the Court as a result of damage caused by a flood to farmland owned by

Claimants in Bureau County near the City of Bureau, Illinois.

It appears that on May 17, 1974, a very heavy rain occurred as a result of which a flood allegedly caused damage to farmland owned by Claimants. The flood was a combination of heavy spring rains and high water in Bureau Creek and its branches.

The evidence is uncontradicted that the Claimants' land is located in a flood plain and that flooding was not unusual in this particular area. The evidence indicates that this was one of the heaviest floods that had occurred in that area and that it was one that will probably only happen once every 50 to 100 years.

The evidence shows that in February and March of 1974 the United States Army Corps of Engineers, working in conjunction with the Illinois Department of Conservation, implemented an emergency construction project along the Illinois-Mississippi (Hennepin) Canal after Bureau Creek, a natural river, had breached the banks of the canal in January of that year. In addition to restoring the breach of the south bank of the canal, the work consisted of creating a series of inlets known as notches, along the south bank. Work was pursuant to a design prepared by the Corps who inspected and supervised the project. The State of Illinois, which owned the canal, provided the manpower to implement the Corps' plan. The purpose of the baffles was to prevent rapid rushes of water through the canal which had occurred in the past when Bureau Creek had flooded. The purpose of the inlets was to enable water escaping from Bureau Creek to flow into the canal at pre-planned points, thereby allowing the water pressure to be dissipated and slowed and allowing the water level to become gradually equalized between the creek and the canal.

It appears that the canal, at the time of the storm in question, was empty and that the notches extended some three to four feet below the level of the canal bank. Claimants contend that the proximate cause of the damage was the State's negligence in cutting, or permitting the Corps to cut, notches in the south bank. Farron Forbeck, one of the Claimants, testified that on the date in question, he saw water coming through the notches. He was the only eye witness produced by Claimants and it was his testimony that as a result of the flooding, he lost crops for 1974 and, to a lesser extent, for 1975, that he lost a measurable amount of topsoil, and that it would be necessary for him to construct a ten-foot-high levee between his property and the canal in order to prevent future flooding.

It is the Respondent's contention that the heavy rains which produced the flooding caused the damage of which Claimants complain. In all, Respondent produced four Department of Conservation employees, two engineers with the Army Corps of Engineers, and a witness expert in hydrology and hydraulics. Based upon their testimony, which was unrefuted by any experts of Claimants, it appeared that the project was undertaken in February and March of 1974, was largely successful despite the flood of May 17, 1974, and that the flood on the date in question was indeed one of record from all available data and that the notches did not contribute to Claimants' damage since there is credible eyewitness testimony that at or near the crest of the flood the water flowed into and over the tops of the canal banks.

It should be noted that the canal was designed for navigation between the Illinois and Mississippi Rivers and was never intended to be a flood control structure. The work performed was only to enable it to take the

overflow of the floods that occurred in the area from time to time.

Respondent's expert witness, Gil Tavener, is a clearly qualified expert in the fields of hydrology and hydraulic engineering. He was asked the hypothetical question which posed the ultimate issued before the Court:

"Q. Now, Mr. Tavener, based upon the facts that you have heard testified to and the study that you have made thereof, do you have an opinion, assuming those facts to be true, as to whether the Forbeck property would have flooded on May 17, 1974, irrespective of whether there were notches present in the south bank of the canal?

A. I certainly do.

Q. And what is that opinion?

A. I'm quite certain that this property would have been inundated by water regardless of whether the canal was even there or not."

Tavener's opinion was based upon a carefully constructed case which showed that based upon eyewitness testimony and elevations taken by Department of Conservation employees, the flood waters ran above Route 29, at which point they were almost ten feet above the highest point on Claimants' property and at least six feet above the top of the canal bank. Tavener's opinion was also based upon extensive research conducted by him in connection with an evaluation of the canal in behalf of an engineering firm in 1975 for which he was a consultant and chief hydraulic engineer. During this period, he had occasion to read many publications concerning the waterway system in Bureau and inspected the canal and creek. He also had the benefit of gauge station readings and prior records of high water in the area.

There was also some testimony offered by Respondent that the farm acreage of Claimants' property had been gradually extended over the years at the cost of removing natural erosion retardants, such as trees and timber, and the filling in or rerouting of natural drainageways. These actions may have contributed to the damage sustained by Claimants on May 17, 1974.

Finally, whether the flood on May 17, 1974, can be characterized as an act of God is a close question. The Court feels, however, that it is not necessary for us to reach this issue. The Court believes that Claimants have failed to establish that the Respondent was in any way negligent and that the conduct of the Respondent was the proximate cause of the damage sustained by them.

This claim is denied.