REGINA HAMMAN LINDENMIER *et al.*, Minors, by their Father and Next Friend, Gilbert Lindenmier, *et al.*, Plaintiffs-Appellants, v. THE CITY OF ROCKFORD *et al.*, Defendants-Appellees.

Second District   Nos. 2—86—0543 through 2—86—0545 cons.

Opinion filed May 29, 1987.

78

Thomas E. Greenwald, of Greenwald, Maier, Hudec & Gray, P.C., and James L. Donohue, both of Rockford, for appellants.

Charles E. Box and Franklin C. Cook, Corporation Counsel, and Scott C. Sullivan, Russell D. Anderson, and Lynn Williams, all of Williams & McCarthy, both of Rockford, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Regina Hamman Lindenmier and Elizabeth Lindenmier by their father and next friend, Gilbert Lindenmier, and Wilma Lindenmier, appeal from the judgment of the circuit court of Winnebago County granting summary judgment for the defendants, the city of Rockford (the city) and Rockford Blacktop Construction Company and Rockford Electric Power, Inc., d/b/a Rockford Electric Power Contractors (Rockford Blacktop). The minor plaintiffs' father originally brought suit against the city for injuries sustained while they were passengers in a car driven by their mother, Wilma Lindenmier, which was involved in an accident with another vehicle allegedly caused by malfunctioning left-turn traffic arrow signals. Gilbert Lindenmier sought to recover for medical expenses in one count of that suit, as

well. Wilma Lindenmier then brought suit in negligence against the city, and all the above-named plaintiffs then brought suit against Rockford Blacktop for negligence and products liability. The cases were consolidated in the trial court. In each, the complaint alleged that on October 19, 1982, and for some time prior thereto, the traffic control signals at the intersection of 11th Street and Samuelson Road in Rockford "were not operating properly and were defective in that they permitted or directed a lefthand turn to be made from southbound 11th Street onto eastbound Samuelson Road while at that same time permitting northbound traffic traveling upon 11th Street in a northerly direction approaching said intersection from the south, to proceed into and through the intersection." It was alleged that the plaintiffs' injuries were the direct and proximate result of the negligence of the city in not repairing and/or not maintaining the signals in their proper operable condition and of the defective condition of the signals which caused them to be unreasonably hazardous to persons using such lights.

When it granted the defendants' motions for summary judgment, the trial court found as a matter of law that the condition of the signal lights had nothing to do with the accident and that no alleged act or omission of these defendants with respect to the traffic signals was a proximate cause of the collision. Plaintiffs appealed after their motion to reconsider was denied, and we *sua sponte* consolidated the appeals into one.

At the outset, we note plaintiffs' brief is not in conformity with Supreme Court Rule 341 (103 Ill. 2d R. 341(e)(6)) in that its statement of facts, which was filed separately 12 days after its brief, contains a majority of incorrect page references to the common law record, thus making it impossible for this court to assess whether the facts as presented by the plaintiffs have been stated accurately and fairly. Further, the appendix of plaintiffs' brief contains neither a copy of the judgments appealed from, nor copies of the notices of appeal, and it does not include filing or entry dates for many of the items shown on the table of contents as is required by Supreme Court Rule 342. (103 Ill. 2d Rules 342(a), (a)(2).) Although this court has inherent authority to dismiss an appeal for such noncompliance with its rules, it is within our discretion to proceed to consider the merits of the appeal, which we do here, in light of the inclusion of facts with proper record references in Rockford Blacktop's brief. 103 Ill. 2d R. 341(f).

In support of their motion for summary judgment, the defendants offered Wilma Lindenmier's deposition. She was deposed as follows: On October 19, 1982, between 7:30 and 7:45 a.m., she was driving her

daughters, Regina Hamman Lindenmier and Elizabeth Lindenmier, to school. Immediately prior to the accident, she was driving southbound on 11th Street approaching its intersection with Samuelson Road. She had often driven that route before on the way to the girls' schools. At the time of the accident, southbound 11th Street near its intersection with Samuelson Road was divided into four lanes: two lanes for southbound through traffic, one lane for traffic turning left to go east on Samuelson, and one lane for traffic turning right to go west on Samuelson. As she approached the intersection, she signaled a lane change to go into the left-turn lane behind another car which was also turning left.

At the intersection, there are three traffic signals governing southbound traffic on 11th Street. Two of the signals are suspended over the southbound lanes of 11th Street from a standard located on the southwest corner of the intersection. The traffic signal which faced the easternmost southbound through-lane on 11th Street has three lenses: solid red, solid yellow, and solid green (light A). The other traffic signal faced the left-turn lane for southbound traffic going east on Samuelson and had five lenses: solid red, solid yellow, solid green, yellow arrow or green arrow (light B). The third traffic signal was located on the southeast corner of the intersection and had five lenses: solid red, solid yellow, solid green, yellow arrow or green arrow (light C). This signal was angled so that it directly faced the traffic turning left onto Samuelson Road from southbound 11th Street.

Just before she entered the left-turn lane, the traffic signals facing her were red. She observed only one car ahead of her in the left-turn lane, and when she first observed it, it was stopped. When she was approximately 5 or 6 feet from entering the left-turn lane, this other southbound vehicle was approximately two car lengths ahead of her in the left southbound turn lane. As she proceeded south in the left-turn lane, all the signals controlling southbound traffic were green, and the car immediately ahead of her pulled around the corner and completed its left turn onto Samuelson Road. She looked at two lights in making her turn: lights B and C. They were green, but not green turn arrows. Although at one time she had seen a green arrow, she did not see a green arrow that day. Sometimes the green arrow was not working.

After entering the left-turn lane, she never stopped her vehicle, but only slowed down to approximately 5 to 10 miles per hour. As she was getting ready to turn, she observed the top of a northbound car which was approximately 300 feet away, coming towards her on 11th

Street. She believed she had time to safely make her left turn across the northbound lanes of traffic. As she began to cross the northbound lanes of traffic, a collision occurred with the northbound vehicle, which was driven by Richard Beck.

For about three years prior to the accident, she would routinely make a left turn from 11th Street onto Samuelson Road while en route to take her children to school. She would typically make the turn from 11th Street onto Samuelson on a full green light as opposed to a green arrow. She knew that it was her duty to yield to oncoming traffic while making a left turn on a full green traffic light. In making her left turn immediately before the accident, she observed that the traffic signal in the southeast corner of the intersection and the traffic signal suspended above the intersection closest to the left-turn lane displayed full green signals alone. When she observed those two full green lights the day of the accident, she felt that before making her turn she had to yield the right-of-way.

She formed the judgment that she had enough time to make the left turn safely because she thought the traffic on northbound 11th Street had a red light. She thought this because she saw another northbound car across the intersection in the easternmost northbound lane which was stopped. She did not recall any details about the stopped car, and she had no way of knowing whether the car was stopped because of a red light as opposed to mechanical difficulties or other problems. Based on her assumption that northbound traffic had a red light, she felt she could make the left turn safely. She had no way of knowing whether the approaching northbound car had a red light; she figured that car would stop because the other car was stopped. She also thought she could make the turn safely because it appeared to her that the northbound vehicle was quite a distance away, and she thought she could go because the car ahead of her had already turned. She did not recall anything about the layout of the intersection or the location of the lights that led her to think that on the day of the occurrence she could do anything other than yield the right-of-way before making her left turn.

In opposition to the defendants' motions for summary judgment, Wilma Lindenmier filed an affidavit. Therein, she stated that when she first saw the car ahead of her in the left-turn lane it was stopped and that it may have been stopped behind other cars but that she did not remember. The car ahead of her began to move south in the left-turn lane, and when she looked at lights B and C they were green only; no other lights were operating. She continued to follow the car ahead of her and it turned left onto Samuelson. As she was coming to

make a left turn, she saw a car stopped on 11th Street facing north in what she believed was the right-hand lane of northbound 11th Street. Lights B and C still showed green and the other northbound car on 11th Street was still stopped. It was her belief at that time that she was permitted to make a left-hand turn and that traffic on 11th Street had to stop and that the green lights on signal B and C meant that she could make a left turn and cars going in all other directions had to stop. She thought that she had enough time to go through the intersection before that left-turn light would turn to yellow or red.

There were no green or yellow arrows operating on lights B and C that day. If there were, she would have realized that in fact northbound traffic on 11th Street had a green light as she was making her turn. She was relying on the green lights on lights B and C to tell her that she could make a left turn and the other vehicles had to stop. She relied on lights B and C to tell her that she could make her turn safely.

Plaintiffs also filed the affidavit of Robert Paul Potosnyak, who was the driver of the car ahead of Wilma Lindenmier in the left-turn lane. For three years prior to October 19, 1982, he would drive through the intersection of 11th Street and Samuelson Road. On that day at that intersection, he made a left-hand turn onto Samuelson Road and then an immediate right-hand turn onto the frontage road which was east of and parallel to 11th Street. As he made his right-hand turn he heard a crash and saw that two cars had collided.

When he made his left turn, he made it on a green light for southbound traffic on 11th Street, and it was his belief that northbound traffic on 11th Street had a red light. On October 19, 1982, and for several days prior thereto, the left-hand turn arrows for southbound 11th Street traffic were out, and the lights would show full green only. Even when the turn arrows did operate, the green and yellow turn arrows were very erratic. Some mornings there would be an arrow and other mornings there would be no arrow. Sometimes the arrow would be on for a matter of a few seconds and sometimes for a long period of time.

Plaintiffs' attorney filed his affidavit which excerpted portions of the deposition testimony of Wilma Lindenmier, Gilbert Lindenmier, and Lester A. Anderson, the city traffic engineer. Also attached to plaintiffs' attorney's affidavit and incorporated therein were the depositions of Ralph Krist, Jeffrey MacAdam and Gerald Bauman.

Gilbert Lindenmier was traveling through the same intersection about 5 or 10 minutes after the accident when he saw that it was his car which had been involved. He observed only the southbound 11th

Street traffic lights for about 3 to 5 minutes, and there were no left-turn arrows working that day.

The excerpts from Anderson's deposition showed that it was the city's responsibility to maintain traffic control signals under the master agreement between the city and the State and that the city assumed such responsibility on or about September 29, 1982. A malfunction complaint was reported as early as September 25, 1982, and on October 12, 1982, Ralph Krist, a signal section employee, responded to a report of the signals being out, and he replaced a load switch.

Jeffrey MacAdam, a traffic signal repairman for the city, stated in his deposition that on October 19, 1982, the southbound left-turn arrows did not work and he replaced the load pack in order to repair them. The solid state relay for the left-turn arrows for southbound 11th Street traffic was defective; however, the solid green, yellow and red ball signals were operable. The left-turn signals are traffic-activated. After the light is on for 4 seconds, a car must pass over the "loop" within 2 seconds of the car ahead of it in order to keep the arrow green or it will phase into yellow. The maximum sequence for the green arrow is 20 seconds.

In his deposition, Gerald Bauman, supervisor of the traffic signal shop, stated the southbound green bulb can also be on at the same time the green arrow is on if there is no northbound left-turn traffic and even if there is northbound through-traffic. Assuming there was no northbound 11th Street traffic in the left-turn lane, and the load pack for the left-turn signals for southbound 11th Street traffic failed, the green ball for the southbound 11th Street traffic would be illuminated, and the northbound 11th Street traffic would still be held by a red signal. The conflict monitor which would sense a malfunction of the lights and switch the system to flashing red would not go on in the case where the left-turn arrows were out, since full green signals for both north and southbound traffic do not present a conflict. One case in which the conflict monitor would switch on would be if there was a green left-turn arrow for southbound 11th Street traffic and a full green light for northbound 11th Street through traffic at the same time.

As noted, the trial court determined the condition of the signals had nothing to do with the accident, and no alleged act or omission of the defendants with respect to the signals was a proximate cause of the collision.

Plaintiffs assert that the defendants' motions for summary judgment did not raise the question of whether there was a breach of duty but, rather, only the question of whether the breach of duty was the

proximate cause of the accident. Plaintiffs contend that proximate cause is a question of fact for the trier of fact and assert that the affidavit of Wilma Lindenmier showed there was a genuine issue of material fact which should have precluded the court's entry of summary judgment. They assert the defendants' breach of duty created a hazard which proximately caused their injuries where the intervening cause reasonably could have been anticipated and, thus, was foreseeable.

█ Although the city agrees that the issue of proximate cause ordinarily presents a question of fact for the jury, it asserts that when the evidence supporting a plaintiff's claim is conspicuously void of any factual connection between the alleged wrongdoing of the defendant and the injuries suffered by a plaintiff, a summary judgment should be granted. It contends that where the alleged malfunction of the traffic signals resulted in the display of only solid green lights as opposed to green and yellow left-turn arrows, it was Wilma Lindenmier's decision to turn left on those solid green lights in front of oncoming traffic, based on her assumption that such oncoming traffic would be shown a red light, which was the proximate cause of the injuries and not its alleged negligence. The city further asserts that even if the display of the solid green lights was the product of a malfunction, the intersection was not thereby rendered unreasonably hazardous for drivers seeking to make a left-hand turn, since the only hazard which would exist is the same one which exists whenever a left-hand turn is permitted on a two-way street. Lastly, the city contends that Wilma Lindenmier's admission in her deposition that she understood the green light at that intersection meant that she had to yield the right-of-way to oncoming traffic defeats the plaintiffs' claims, since they are premised on the idea that the alleged malfunction of the turn arrows caused Wilma Lindenmier to become legitimately confused as to whether or not the full, circular green lights displayed to her meant that she could make a protected left-hand turn. The city asserts her deposition admission precludes any claim that she was confused by the allegedly malfunctioning lights. Thus, it contends, the plaintiffs failed to establish an essential element of their *prima facie* case, *i.e.*, that the alleged malfunction of the lights was the proximate cause of the injuries.

Rockford Blacktop also argues that the plaintiffs did not establish a *prima facie* case of negligence or products liability and contends that it was neither the cause in fact nor the legal cause of the plaintiffs' injuries. Further, Rockford Blacktop contends Wilma Lindenmier's affidavit did not create a genuine issue of material fact which

would preclude summary judgment.

When a plaintiff appeals from a trial court's order of summary judgment for a defendant, the only issue on appeal is whether " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.)" (*Wilmere v. Stibolt* (1987), 152 Ill. App. 3d 642, 646.) Summary judgment is proper only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto. (*Fisher v. Crippen* (1986), 144 Ill. App. 3d 239.) When a defendant files a motion for summary judgment, the plaintiff must come forward with evidence of negligence on the part of the defendant and with evidence that defendant's negligence was a proximate cause of the plaintiff's injuries. *Whitman v. Lopatkiewicz* (1987), 152 Ill. App. 3d 332, 336.

In order to prevail on a claim of common law negligence, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately caused by the breach. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996.) Similarly, to prevail on a products liability claim, the plaintiff must prove that the injury proximately resulted from a condition of the product. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612; *Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217; *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228.) Liability cannot be predicated upon surmise or conjecture as to the cause of the injuries; proximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury. (*Whitman v. Lopatkiewicz* (1987), 152 Ill. App. 3d 332, 338; *Vance v. Lucky Stores, Inc.* (1985), 134 Ill. App. 3d 166.) The concept of proximate cause is the same in both cases of negligence and strict liability in tort. (*Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, 127.) When the pleadings, depositions and affidavits fail to establish an element of the plaintiff's cause of action, summary judgment is proper. *Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 70; *Young v. Texas Eastern Transmission Corp.* (1985), 137 Ill. App. 3d 35.

If the movant supplies facts which, if uncontradicted, would entitle him to judgment as a matter of law, the opponent cannot rely on his own complaint or answer to raise genuine issues of material fact. (*Garde v. Country Life Insurance Co.* (1986), 147 Ill. App. 3d 1023, 1029.) Supporting documents opposing a motion for summary judgment must recite facts and not mere conclusions or

statements based on information and belief. (*In re E.L.* (1987), 152 Ill. App. 3d 25, 31.) Summary judgment will not be reversed absent an abuse of discretion by the trial court such that the plaintiff's right to fundamental justice is violated. *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360; *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1.

Plaintiffs assert that a genuine issue of material fact was created by virtue of Wilma Lindenmier's affidavit filed in opposition to the defendants' motions for summary judgment which, in turn, was supported by her deposition. Plaintiffs contend it was error for the court in granting summary judgment to "rely" only upon Mrs. Lindenmier's deposition testimony that when she saw the full green light the day of the accident, she felt that before making her turn she had to yield the right-of-way. They contend summary judgment was improperly granted since this question was put to Mrs. Lindenmier, who was not a high school graduate, by lawyers after substantial questioning and in view of her subsequently filed affidavit in which she states her "belief" that the green lights on lights B and C meant that she could make a left turn and that cars going in all directions had to stop. In her affidavit, Mrs. Lindenmier stated she thought she had "enough time to go through the intersection before *that left turn light* would turn to yellow or red." (Emphasis added.) Thus, plaintiffs contend, the record establishes the genuine issue of material fact of whether the malfunctioning traffic signal presented a hazard which was a proximate cause of the accident. Plaintiffs admit "it may have been that Mrs. Lindenmier should have proceeded more cautiously," but argue that her shortcomings in dealing with the hazard created by defendants' negligence should not foreclose relief to the minor plaintiffs.

Plaintiffs' reliance on *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, in this regard is misplaced, however. In that case, the defendants' negligence created a situation in which a stop sign was virtually completely obscured to the view of approaching drivers by overhanging foliage. In contrast, it is undisputed here that Mrs. Lindenmier saw the signals clearly displayed and that they were full, circular green lights. Plaintiffs' attempt to create an issue of fact out of the circumstance that these lights were displayed as a result of a malfunction, rather than by design, based on Mrs. Lindenmier's perception of the legal effect of the green lights, is unpersuasive.

As the city notes, the questions posed to Mrs. Lindenmier during her deposition concerning the appropriate response to a full, circular green traffic signal were not phrased in terms likely to confuse any

licensed driver. She was queried about her perception of the meaning of a full circular green traffic signal in general terms and also in particular with regard to the full circular green light she saw on the day of the accident. In both instances, her perception was that she had to yield the right-of-way to oncoming traffic.

The contrary perception of the green lights expressed in her affidavit is based on her unsupported conclusion that the full circular green light displayed on lights B and C was itself a left-turn signal upon which she could rely to tell her that she "could make a left turn and the other vehicles had to stop." Her deposition testimony makes it clear that previously she had seen a left-turn arrow at that intersection, but that she did not see one on the day of the accident, and she stated that sometimes the left-turn arrow was not working. Further, for three years prior to the accident, she typically made the turn from 11th Street on to Samuelson Road on a full green light as opposed to a green arrow. Her affidavit provides no facts which would support her conclusion that lights B and C in their full green mode were protected left-turn signals.

Supreme Court Rule 201(j) provides that disclosure of any matter obtained by discovery is not conclusive, but may be contradicted by other evidence. (87 Ill. 2d R. 201(j).) Although judicial admissions are binding upon the party making them and may not be controverted (*Rosbottom v. Hensley* (1965), 61 Ill. App. 2d 198), ordinary evidentiary admissions may be controverted (*Ayers v. Metcalf* (1866), 39 Ill. 307). Testimony of a party at a deposition is treated only as an evidentiary admission. (*Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 723.) However, in *Young v. Pease* (1983), 114 Ill. App. 3d 120, 122-23, the court noted:

" 'There may be cases in which admissions at pre-trial depositions are so deliberate, detailed, and unequivocal, as to matters within the party's personal knowledge, that they will conclusively bind the party-deponent, and he will not be heard to contradict the admissions at the trial' (*Haskell v. Siegmund* (1960), 28 Ill. App. 2d 1, 11, 170 N.E.2d 393) and that a counteraffidavit does not place in issue material facts which had previously been removed from contention by a party's deliberate and unequivocal admissions under oath. (*Fountaine v. Hadlock* [(1971), 132 Ill. App. 2d 343]; *Burnley v. Moore* [(1963), 41 Ill. App. 2d 156]; *Meier v. Pocius* [(1958), 17 Ill. App. 2d 332].) This rule is an expression of a judicial policy aimed at eliminating the temptation to commit perjury. *DuPree v. Terry* (1971), 1 Ill. App. 3d 169, 273 N.E.2d 630."

The court found the plaintiff's admissions in that case, however, were not so deliberate and unequivocal as to preclude their subsequent contradiction by the affidavit of another party who had knowledge of the facts and circumstances surrounding the discovery that the plaintiff there may have been improperly treated by defendant.

In contrast to that case, we find no equivocation in Mrs. Lindenmier's deposition testimony concerning her perception that she had to yield the right-of-way to oncoming traffic by virtue of the full green traffic signal. Whereas her affidavit expresses her perception that the green lights provided her with a protected left-hand turn, it is clear from her deposition that her decision to turn left was not based on the condition of the lights displayed to her but, rather, on her incorrect assumption that northbound traffic had a red light—based on the alleged stopped car—and that she had "enough time" to turn "safely" in front of the approaching northbound car, *i.e.*, either before the northbound light changed to green or before the approaching car simply would reach the intersection and cross her path.

■■ As was the case in *Pedersen v. Joliet Park District* (1985), 136 Ill. App. 3d 172, we find unpersuasive the plaintiffs' attempt to create a genuine issue of material fact by virtue of Mrs. Lindenmier's self-contradictory affidavit. A fact is material to the claim in issue when the success of the claim is dependent upon the existence of that fact. (See generally *Lighthart v. Lindstrom* (1975), 24 Ill. App. 3d 918; *Menge v. Liberty National Bank* (1962), 36 Ill. App. 2d 61.) It is clear from Mrs. Lindenmier's deposition testimony that she realized the full green lights displayed to her neither directed nor permitted her to make a protected left-hand turn. The assertion in her affidavit that the full green signal was a left-turn signal is strictly a conclusion and not a statement of fact. Accordingly, it was insufficient to establish the existence of a genuine issue of material fact. See *Young v. Texas Eastern Transmission Corp.* (1985), 137 Ill. App. 3d 35, 38.

■■ The affidavit of Robert Paul Potosnyak likewise did not create a genuine issue of material fact. His statement therein that he believed that when he made his left turn on the full green light, northbound traffic on 11th Street had a red light, is conclusionary and unsupported by any facts whatsoever from which such conclusion was drawn. Affidavits submitted in opposition to a motion for summary judgment may not consist of conclusions, but of facts admissible in evidence (87 Ill. 2d R. 191(a)), and such conclusionary matters may not be considered in opposition to motions for summary judgment. *Milwaukee Cheese Co. v. Cornerstone Inn, Inc.* (1986), 142 Ill. App. 3d 840.

Accordingly, we conclude the court did not err in its determination that no genuine issue of material fact was presented by the plaintiffs' affidavits.

We next consider whether the court correctly determined that the defendants were entitled to judgment as a matter of law. That is, whether the court correctly determined that the pleadings, depositions, and affidavits failed to establish that the plaintiffs' injuries were proximately caused by the defendants.

" 'Proximate cause' is a term of art which encompasses the distinct concepts of cause in fact and legal cause. Determining whether the defendant's conduct was a cause of plaintiff's injury involves nothing more than an analysis of the facts. Once it is established that the defendant's conduct has in fact been a cause of the injury, however, there remains the question whether the defendant should be legally responsible for what he has caused. As otherwise stated, the question is whether the policy of the law will extend defendant's responsibility to the consequences which have in fact occurred.

Two tests are generally applied in determining the issue of causation in fact. Under the 'substantial factor' test, the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing it about. Under the second test, commonly called the 'but for' rule, the defendant's conduct is not a cause of an event if the event would have occurred without it. [Citations]." *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 333, affirmed in part, reversed in part (1979), 76 Ill. 2d 154.

■■■ As to legal cause, a defendant is legally responsible for all of the natural and probable results of his actions; that is, for all the consequences which an ordinary prudent person ought to have foreseen as likely to occur. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1019, *affirmed* (1986), 112 Ill. 2d 378.) " 'The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.' " *Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 1000, citing *Mieher v. Brown* (1973), 54 Ill. 2d 539, 544.

"A proximate cause is one which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause. [Citation.] If the negligence charged does nothing more than furnish a condition which made the injury possible and that

condition causes an injury by the subsequent independent act of a third party, the creation of that condition is not the proximate cause of the injury. [Citation.] The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause. [Citation.]" *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361.

The intervention of a new intervening cause does not necessarily relieve one of responsibility for a negligent act when the intervening cause of the injury is of such nature as could reasonably have been anticipated. (*Parvin v. Sill* (1985), 138 Ill. App. 3d 325; *Kirk v. Michael Reese Hospital & Medical Center* (1985), 136 Ill. App. 3d 945.) Although proximate cause is ordinarily for the jury to determine (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 393; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84), where it is apparent from the undisputed facts that only one conclusion can be drawn, the question then becomes one for the court to resolve as a matter of law (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 318; *Fisher v. Crippen* (1986), 144 Ill. App. 3d 239, 244; *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361; *Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 1000).

Plaintiffs contend the trial court incorrectly granted summary judgment where the defendants have not demonstrated that the intervening event was unforeseeable as a matter of law if the complicated signal system was not operating properly. They point to the lights' built-in fail-safe system as evidence the defendants were well aware of the risk in the event of malfunction and assert that ordinary people could certainly conclude that an accident was foreseeable.

We find the court did not err in determining that the conduct of the defendants which resulted in a full green traffic signal being displayed to Wilma Lindenmier was neither the cause in fact nor the legal cause of her decision to make the left-hand turn and that it correctly entered summary judgment for the defendants as a matter of law.

Wilma Lindenmier's decision to turn was based strictly on her own assumption that it was safe to do so when, in fact, she admitted she had no way of knowing whether oncoming traffic actually had a red light and in spite of the fact she knew a full green light meant she had to yield the right-of-way. No condition of the traffic signals directed or permitted her to make that left-hand turn.

The instant cause is analogous to the situation presented in *Dace v. Gilbert* (1981), 96 Ill. App. 3d 199. There, the court upheld entry of summary judgment for the defendant where it found the signal given

to the plaintiff driver by the defendant fellow motorist, indicating it was safe for plaintiff to turn, was not the proximate cause of the plaintiff's subsequent collision in view of plaintiff's deposition testimony that he relied on his own vision to determine if he could turn safely and not on defendant. Here, Mrs. Lindenmier's deposition testimony showed she made the left turn not in reliance on any condition of the lights provided, negligently or otherwise, by the defendants but, rather, based on her own perception of the circumstances which existed at the intersection. Her attempt to state her reliance was otherwise in her affidavit opposing summary judgment has already been rejected, as discussed above.

Plaintiffs' argument that the defendants' negligence was at the least a contributing cause to their injuries is without merit. Plaintiffs contend that a jury could easily conclude that "but for" the absence of the green arrow or the yellow arrow, the accident would never have occurred since, if either arrow had been working, Mrs. Lindenmier would have had a warning that the lights for northbound traffic were changing from red to green. Plaintiffs' contention is based upon the incorrect premise that lights B and C, which showed only full green, indicated to Mrs. Lindenmier in fact that she could make a left turn and that the northbound vehicles would be held by a red light. However, Mrs. Lindenmiers' deposition testimony shows she admitted she knew that the full green traffic signal she observed on that day meant that she had to yield the right-of-way to oncoming traffic. Thus, the full green light itself warned her that it was she who must yield to any opposing traffic. Mrs. Lindenmier also stated that she had seen a left-turn arrow at that intersection but that sometimes the arrow was not working, and she did not see a left-turn arrow on the day of the accident. Based on such undisputed facts, it is clear the accident would have occurred whether the green lights displayed to Mrs. Lindenmier were so displayed by virtue of the malfunction resulting from the defendants' negligence or whether they were displayed by design.

We further find defendants' conduct was not the legal cause of the plaintiffs' injuries. It was not reasonably foreseeable as a matter of law that Mrs. Lindenmier would believe a protected left turn could be made on a full green signal in the absence of green turn arrows or other such indicia of traffic regulation. The test is whether the first wrongdoer might reasonably have anticipated the intervening cause as a natural and probable result of its own wrongdoing. (*Boylan v. Martindale* (1982), 103 Ill. App. 3d 335.) We do not believe the defendants reasonably could have anticipated that Mrs. Lindenmier

would disregard the acknowledged, statutorily prescribed response to the display of full, circular green traffic lights in favor of the utterly ambiguous meaning of the presence of a single stopped car on the opposite side of the intersection in deciding to turn left in front of another oncoming car.

Plaintiffs assert that the existence of the fail-safe system built into the traffic lights provides some indicia that the intervening event was foreseeable. However, the record shows the conflict monitor in the traffic light system would not be triggered by the absence of left-turn arrows for the reason that a full green signal for southbound traffic presents no conflict with northbound traffic which has either a red or green signal, and not—as plaintiffs suggest—strictly for reasons of economics and mechanical limitations. The absence of left-turn arrows presents no conflict because in that instance, left-turn movement for traffic proceeding in either direction is prescribed by statute. Ill. Rev. Stat. 1985, 95½, par. 11—306.

For the reasons expressed above, the judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

DUNN and INGLIS, JJ., concur.