THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD TANGWALL, Defendant-Appellant.

Second District    No. 2—87—0890

Opinion filed July 13, 1988.

Donald Tangwall, of Sublette, appellant *pro se.*

Eugene L. Stockton, State's Attorney, of Dixon (William L. Browers
and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's
Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Donald Tangwall, was convicted of eavesdropping (Ill.
Rev. Stat. 1985, ch. 38, par. 14—2(a)) after a jury trial in the circuit
court of Lee County and was sentenced to 18 months' probation, 15
hours of community service, a fine, and court costs. On appeal, he

contends that the trial court did not have personal jurisdiction over him and that his sixth amendment right to counsel was violated when he was not permitted to have a nonattorney represent him at trial. We affirm.

On August 27, 1986, defendant was arrested for eavesdropping for allegedly using a tape recorder to record a conversation between Lee County State's Attorney Eugene Stockton and Bureau County Circuit Court Judge C. Howard Wampler without their consent.

At trial, State's Attorney Stockton testified that on April 15, 1986, he accompanied the sheriff of Lee County to Kenneth Leffelman's farm to assist the sheriff in serving a court order authorizing the seizure of certain pieces of farm machinery. After the sheriff and Stockton arrived, the Leffelmans produced a document indicating that the Leffelmans had filed a bankruptcy petition and asked Stockton to call Judge Wampler, who had issued the order. Stockton did so and was advised by Wampler to seize the property despite the bankruptcy petition because the Leffelmans could not be trusted. At that point, Terry Leffelman, who was listening to the conversation on another extension, began to argue with Judge Wampler. The judge thereupon instructed Stockton to call him from someplace other than the Leffelman farm. Stockton also testified that he did not consent to anyone listening to the telephone conversation.

Judge C. Howard Wampler, a circuit court judge in Bureau County, testified that he had a telephone conversation with Eugene Stockton concerning the Leffelmans' purported bankruptcy stay and that he became angry when he discovered that Terry Leffelman was listening to the conversation. Judge Wampler also testified that he did not consent to anyone listening to his conversation with Stockton.

Jean Delhotal, a certified court reporter for Lee County, testified that she was the court reporter who recorded Donald Tangwall's testimony as a witness during a criminal trial involving Terrence Leffelman. Delhotal stated that a transcript of Tangwall's testimony, which was marked as an exhibit, was accurate, and it was admitted into evidence.

The final witness for the State was Judge John Payne, who presided at Terrence Leffelman's criminal trial. Judge Payne stated that Donald Tangwall testified at Terrence Leffelman's trial, and that the transcript admitted in evidence was a true and accurate report of his testimony. Judge Payne then read the following questions and answers from Donald Tangwall's testimony:

" 'Yes. I'll preface these with answer and question. The an-

swers are being given on this page by Mr. Tangwall, and the questions are by Miss Walker, who was the prosecutor.' *Answer: 'Was I present on the property at that time. Yes, I was.'* Question: 'And did you see Sheriff Nehring?' Answer: 'No, I did not.' Question: 'Now you don't recall having seen him at all through the day?' Answer: 'None whatsoever, no.' Question: 'Where were you when this purported incident involving the tool shed and Mr. Leffelman and the sheriff took place?' Answer: *'I was in the basement tape recording conversations between Mr. Wampler, the attorney at Bureau County, the State's Attorney of this county, and Mr. Terry Leffelman.'* Question: 'Was that with the permission of any of those people?' Answer: 'Permission of what people?' Question: 'Any of the people involved in that conversation you just described.' Answer: 'No, but of course it's not offered as evidence right now.' Question: 'All right. Thank you. You say there was a Mr. Wampler?' Answer: 'C. Howard Wampler I believe.' Question: 'Is that by some chance a judge of Bureau County?' Answer: 'That's who it is; correct.' Question: 'You were tape recording conversations involving Judge Wampler, State's Attorney of Lee County'—and then there's an interrupted answer. Answer: 'State's Attorney Stockton and Mr. Nehring and Mr. Terry Leffelman. That's correct.' " (Emphasis added.)

The State concluded its case in chief by asking the court to take judicial notice that a tape recorder is an eavesdropping device. Defendant's motion for a directed verdict was denied, and he opened his case by calling Kenneth Leffelman as a witness.

Leffelman testified that on the day in question, Donald Tangwall called him several times from St. Petersburg, Florida. He stated that he did not know anyone else who lived in St. Petersburg and that Donald Tangwall was not present when the telephone conversation between Judge Wampler and Eugene Stockton took place.

The final defense witness was Terry Leffelman, who testified that on April 15, 1986, Donald Tangwall was in Florida and called the Leffelman home from St. Petersburg. He also stated that there were no tape recording devices in the Leffelman home. On cross-examination Terry acknowledged that he knew other people who lived in St. Petersburg.

In rebuttal, the State called Patsy Heckman, the court reporter who had recorded defendant's preliminary hearing. She read the defendant's questioning of Nancy Leffelman, where he stated that he was in the house, that there was a recording device on the tele-

phone, and that he was listening to, but not recording, the conversation between Eugene Stockton and Judge Wampler.

The jury returned a guilty verdict and, after defendant's post-trial motion was denied, he has appealed.

■ Before turning to the merits of the defendant's contentions, we note that his brief does not contain an adequate statement of facts, as required by Supreme Court Rule 341(e)(6) (113 Ill. 2d R. 341(e)(6)). In addition, defendant's arguments are, for the most part, incoherent, with numerous citations to cases entirely irrelevant to the issues at hand. While we have the authority to dismiss an appeal for violation of Supreme Court rules, we have the discretion to consider the merits of the appeal (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 79, 508 N.E.2d 1201, 1204) and will do so here.

■ The first issue raised by the defendant is that the trial court did not have jurisdiction over his person. While much of defendant's argument on this point is gibberish, the gist of his argument seems to be that he cannot be prosecuted by the State of Illinois because there is no "nexus" connecting him to Illinois.

In order to try an accused, the court must have subject matter and personal jurisdiction. (*People v. Martinez* (1986), 150 Ill. App. 3d 516, 517, 501 N.E.2d 1003, 1004; *People v. McCarty* (1981), 101 Ill. App. 3d 355, 357, 427 N.E.2d 1382, 1384.) While defendant cites many cases he suggests support his argument that Illinois courts have no power over him, closer scrutiny reveals that he leaves out words from quotations, quotes phrases from cases out of context, and misinterprets the actual holding of the cases. For example, defendant cites *Warren v. District of Columbia* (D.C. App. 1981), 444 A.2d 1, for the proposition that "no general or special nexus exists [*sic*] between the individual (*e.g.*, me) and the state." In reality, *Warren* concerned a lawsuit against the District of Columbia for failure to provide adequate police protection. The *Warren* court's only language resembling defendant's proposition states: "The duty to provide public services is owed to the public at large, and, absent a special relationship between the police and an individual, no specific legal duty exists." (*Warren*, 444 A.2d at 3.) Defendant also quotes *Hale v. Henkel* (1906), 201 U.S. 43, 50 L. Ed. 652, 26 S. Ct. 370, as stating: "The individual owes nothing to the State for he receives nothing therefrom [*sic*]." Not only does this misquote *Hale*, but the quote is taken out of context. The actual quote in context is as follows:

"He owes no duty to the state or his neighbors to divulge his

business, or to open his doors to an investigation, so far as it may tend to incriminate him. He owes no such duty to the state, since he receives nothing therefrom, beyond the protection of this life and property." *Hale*, 201 U.S. at 74, 50 L. Ed. at 665, 26 S. Ct. at 379.

Defendant also argues that courts are not "courts" in the regular sense of the word, but merely extensions of administrative agencies. In support of this contention, defendant refers this court to *Federal Radio Comm'n v. General Electric Co.* (1930), 281 U.S. 464, 74 L. Ed. 969, 50 S. Ct. 389. The Supreme Court did not there find that all courts were merely extensions of administrative bodies, but instead held that it did not have jurisdiction to review that particular case because the court of appeals of the District of Columbia was not acting judicially, but as a part of an administrative agency when it reviewed Radio Commission licensing decisions. *Federal Radio Comm'n*, 281 U.S. at 467, 74 L. Ed. at 971, 50 S. Ct. at 390.

Finally, defendant cites *California v. Farley* (1971), 20 Cal. App. 3d 1032, 98 Cal. Rptr. 89, for the proposition that minor offenses cannot call the State's police power into action, and no reasonable act of a person can, by itself, create jurisdiction over the person. *Farley* and the case to which it refers, *People v. Wohlleben* (1968), 261 Cal. App. 2d 461, 67 Cal. Rptr. 826, actually stand for the proposition that, in California, minor traffic arrests must be made pursuant to the Vehicle Code, not the Penal Code. *Farley*, 20 Cal. App. 3d at 1035, 98 Cal. Rptr. at 91; *Wohlleben*, 261 Cal. App. 2d at 463, 67 Cal. Rptr. at 828.

Section 1—5(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 1—5(a)(1)) states that a person is subject to prosecution in Illinois if he commits an offense within the State. Defendant's testimony at Terry Leffelman's trial establishes that he was in Illinois at the time of the offense and that the offense was committed in Illinois. Tangwall's presence and conduct create the "nexus" with the State of Illinois required by law, and the circuit court had jurisdiction over him in trial.

■ Defendant also contends that he was denied his sixth amendment right to counsel because the court would not allow him to be represented by a nonattorney. In *People v. Schwarz* (1987), 155 Ill. App. 3d 41, 507 N.E.2d 1192, we recently held that a defendant is not entitled to be represented by a nonattorney at trial. In this case, defendant was permitted to have a nonattorney sit with him and advise him during the trial, and Terry Leffelman was present at and spoke during the instruction conference. In that the defendant has

not given us any rationale[1] for overruling *Schwarz*, we follow its reasoning and find that defendant's sixth amendment right to counsel was not violated.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DUNN and INGLIS, JJ., concur.

---

[1]On the State's request, we have examined defendant's brief in *Schwarz* and note that defendant's argument in the present case is virtually identical to the argument in the *Schwarz* brief.