(No. 88-CC-0993–)

CLETUS WALL and MARY LOU WALL, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed November 9, 1992.*

C. MICHAEL WITTERS, for Claimants.

ROLAND W. BURRIS, Attorney General (PHILLIPS MCQUILLAN, Assistant Attorney General, of counsel), for Respondent.

## ORDER

BURKE, J.

Claimants, Cletus Wall and Mary Lou Wall, seek to recover from Respondent for its alleged negligence, as a result of which Claimants' cinder block basement wall collapsed due to flooding. The house is situated on the east side of SBI Route No. 1 on the south side of the Village of Patton, Wabash County, Illinois. The Claimants owned their home since 1980.

Claimants contend that on May 26, 1986, as a result of a five-inch rain over a period of several hours, water escaped from Respondent's surface water collection system and was allowed to "pond" against Claimants' home, thereby resulting in the collapse of the basement wall. Claimants allege that this surface water drainage system within the right-of-way of SBI Route No. 1 failed or was

inadequately designed and was the proximate cause of the property damage sustained by Claimants. More specifically, Claimants contend that the Respondent

(1) failed to properly maintain the drainage system to prevent its failure during periods of high water movement;

(2) installed and operated a drainage system inadequate to transport the amounts of water known to accumulate in the area the system was intended to serve; and

(3) operated its drainage system over and across Claimants' land without authority and without notice to Claimants.

Respondent denied the allegations.

When Claimants acquired their home, there was a 40-foot long open ditch behind their house, running in a generally east and west direction toward a railroad embankment. Claimants testified that two 12-inch clay pipes emptied into the west end of the open 40-foot ditch. The ditch was approximately four feet wide and three feet deep. Claimant Cletus Wall stated that upon acquiring the property he closed up the 40-foot ditch, but connected a 16-inch pipe to the ends of the 12-inch lateral clay pipes and into a culvert tile under the railroad tracks at the rear of his property. Claimant then filled up the entire ditch. The railroad embankment at the back of Claimants' property acted like a dam. In addition to running the 16-inch pipe to the head of the ditch, Claimant also ran two four-inch flexible plastic lines from ground level into the culvert under the railroad tracks.

Respondent installed the surface water collection system draining the entire south half of the Village of Patton, Illinois, in 1957. All of the water collected by the system

collected in a manhole located directly in front of Claimants' home on the east side of SBI Route No. 1. Respondent connected the manhole to two preexisting 12-inch clay tiles which had been installed running in a generally east and west direction through Claimants' property and installed by persons unknown. Respondent's engineers testified that the twin 12-inch clay tiles had not been installed by the Respondent. Respondent disclaims any responsibility whatsoever for maintaining the clay tiles, notwithstanding the fact that Respondent's 1957 installation of manhole No. 7 utilized the clay tiles in moving the water from the manhole to the east through Claimants' property.

Robert Brinkopf, a maintenance field engineer for the Illinois Department of Transportation who supervised Wabash County, was made aware of the flooding conditions in Patton. He stated that the drainage system was designed to drain the water from the center of Patton south and consisted of a combination of 12- and 15-inch concrete pipe drains installed laterally down the highway to various inlets which finally connect to a three- by two-foot concrete box culvert beneath the highway which drained into the two vitrified clay pipes going through the Claimants' property. The only other way that water could move from the south side of Patton was over the surface of the ground. The Claimants' property lying east of the highway naturally received water from land west of the highway due to the topographic features of the land. Respondent did not install or maintain the clay pipes and did not assume responsibility for them. Brinkopf stated that at the time of the incident in question, the water overflowed the roads and that there was substantial water all over Patton. Brinkopf also testified to the plans of the highway and drainage at the location. He stated that

drainage was accomplished by open ditches along either side of the highway through culverts under the highway and through open ditches easterly through pipe culverts under the railroad. Department records showed no evidence that the State of Illinois installed the lateral clay pipes and the State did not use vitrified clay pipe in road construction around the Village of Patton. The State never had an easement across the Claimants' property. The clay pipes were in existence prior to the installation of the manhole. The westerly opening of the clay pipes was evidently on State right-of-way or at the edge of State right-of-way. The State did nothing to divert the water to Point 7 that was not already going to Point 7. The closing of the open ditch reduced the amount of surface water that could have gotten away at the Claimants' location, and there was a significant difference in the amount of water that could be moved because of the lack of the open ditch. Mr. Brinkopf testified that there was no indication that the clay pipes collapsed or contributed to Claimants' problem.

Claimant Cletus Wall testified that when he moved to the property he knew there was a drainage tile from the manhole running across his property but he did not know where it went or how it ran. He testified there was an open ditch on the back 40 feet of his property between the drainage tile and the railroad "dam" that began approximately 20 feet behind the back of his house and ran to the railroad track where there was a culvert. Claimant knew that pipes from the direction of the manhole emptied into the ditch. Claimant closed up the ditch with a sewer pipe and filled up the entire ditch. The sewer pipe was 16 inches in diameter. Claimant also totally filled in and blocked off the railroad culvert and put the 16-inch line into the railroad culvert. Claimant also ran

two four-inch lines inside the railroad culvert to a grading by the railroad system dump where the ditch was filled in.

Claimants called Michael Gill, a registered professional engineer. Gill testified that the storm sewer system would have affected the rate of flow, the pressure of flow and the manner of flow of surface water from the area. Gill said the pipes have a lower friction and would let the water flow faster. Gill testified that the system would have a tendency to allow water to back up because the water could not get out of the manhole fast enough through 12-inch clay tiles. As the water backed up, it would raise the water pressure. He further stated that the sewer system would increase the velocity of the water, and that if the system was full there would be an overflow of surface water which would flow east toward the railroad embankment. The open ditch would have been a more efficient carrier of surface water. Gill said that the reduction of the pipes from two 12-inch laterals to one 16-inch lateral would adversely affect the drainage flow. Gill admitted that the presence of the open ditch at the back of Claimants' property would have significantly alleviated the drainage problem in this area. Gill testified that he made no study in regard to the collapse of the Claimants' basement wall and was not aware that the basement wall was a concrete block structure. Gill stated that he had knowledge of concrete block basement walls caving in from time to time because of an accumulation of surface water, but that he was not a structural engineer and did not work with buildings and would not be comfortable testifying to matters pertaining to structures or buildings. Gill testified that he had no idea and could not render an opinion to a reasonable degree of engineering certainty as to what caused Claimants' basement wall to collapse. Gill

further testified that whoever eliminated the ditch contributed to the water problem.

Robert Benham, an Illinois Department of Transportation employee with 20 years of experience, was called to Patton on the morning in question and when he arrived he found two feet of water on the pavement at the north end of town. Although Benham had lived in Wabash for 47 years, he had never seen water standing or blocking the State highway on the north end of the Village of Patton to the extent noted on the date in question. He was familiar with the open ditch behind the Claimants' property, and knew that it had been filled in. Benham testified that when he observed the area around Claimants' house, there was water standing across the pavement, and water standing over manhole No. 7 which was lower than the pavement. The manhole cover was estimated to be 1½ feet beneath the surface of the highway. The entire Village of Patton was flooded.

Claimants failed to show that anything the State did, or failed to do, in respect to the water drainage system at the location in question caused or contributed to the damage sustained by the Claimants. Although there is evidence that the design of the drainage system installed by the State may have caused the water to be delivered to the area of Claimants' home with greater velocity, there is no showing that this phenomenon caused or contributed to cause a condition which resulted in Claimants' damage. Furthermore, Claimants' action in closing the open ditch that ran laterally across their property to the railroad dam significantly reduced the runoff of water from the area of Claimants' home.

This Court has previously held that the action of a claimant in impeding the natural flow of water across his

property is justification for denying his claim based on flood damage. (*Wells v. State* (1953), 21 Ill. Ct. Cl. 384.) Likewise, in *Forbeck v. State* (1980), 33 Ill. Ct. Cl. 86, this Court considered that the actions of the claimant in clearing land and removing natural erosion retardants could be considered in denying claimant's complaints for flood damage to his property. Claimant's actions in filling or rerouting natural drainage ways were considered in denying claimant's complaint.

Claimants failed to establish that any action on the part of Respondent was the proximate cause of Claimants damage. In *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328, the court stated:

"Liability cannot be predicated upon surmise or conjecture as to the cause of the injury; proximate cause can only be established when there is a reasonable certainty that Defendant's acts caused the injury. (Citation omitted.) No liability can exist unless the Defendant's alleged negligence is the legal cause of the Plaintiff's injury, and if the Plaintiff fails to establish the element of proximate cause, she has not sustained her burden of making a *prima facie* case and a directed verdict is proper." 48 Ill. Dec. 297, 300.

In *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201, 108 Ill. Dec. 624, the court stated:

"In order to prevail on a claim of common law negligence, a Claimant must show a duty owed by the Defendant to the Plaintiff, a breach of that duty, and an injury proximately caused by the breach. [Citation omitted.] ° ° ° Liability cannot be predicated upon surmise or conjecture as to the cause of the injury; proximate cause can only be established when there is a reasonable certainty that the Defendant's acts caused the injury." (Emphasis added.) 108 Ill. Dec. 624, 630.

The Illinois Drainage Code (Ill. Rev. Stat. 1987, ch. 42, par. 1—1 *et seq.*) provides that a landowner may not willfully or intentionally interfere with any ditches or natural drains crossing his land in such a manner that such ditches or natural drains shall fill or become obstructed with any matter which materially impedes or interferes with the flow of water. See Ill. Rev. Stat. 1987, ch. 42, par. 2—12.

Finally, the Illinois Supreme Court has stated that where water from one tract of land falls naturally upon the land of another, the owner of the lower land must suffer the water to be discharged upon his land, and has no right to stop or impede the natural flow of the surface water. See *Gough v. Goble* (1954), 2 Ill. 2d 477.

It is therefore ordered that this claim is denied.