(No. 6537—

Beverly A. Wagner, Claimant, *v.* State of Illinois, Respondent.

*Opinion filed February 3, 1978.*

Reese and Schafner, by Harry B. Aron, Attorneys for Claimant.

William J. Scott, Attorney General; Saul R. Wexler, Assistant Attorney General, for Respondent.

Polos, C.J.

Claimant, Beverly A. Wagner, Administrator of the Estate of her late husband, Bernard A. Wagner, has brought this action to recover damages for his death.

Bernard Wagner died on August 25, 1971, as the result of injuries he suffered in a motorcycle accident on August 18, 1971. The accident occurred at the intersection of an exit ramp from Interstate 55 and County Line Road in Cook County, Illinois. Claimant contends that the death of her husband was proximately caused by the negligence of the State of Illinois in permitting gravel to accumulate on the exit ramp, which caused the deceased to lose control of his motorcycle while traveling on the ramp.

At about 8:45 p.m. on August 18, 1971, Bernard Wagner was proceeding from his place of employment at 2400 South California Avenue in Chicago, to the Santa Fe Speedway. He was driving a 1964 B.S.A. motorcycle. It appears that he was an experienced motorcycle driver who took good mechanical care of his machine. Mr. Wagner was not wearing a crash helmet at the time of the accident.

Wagner proceeded westbound on Interstate 55, and left I-55 at the southbound County Line Road exit. The exit ramp was a single lane concrete roadway with shouders on either side, which were in turn bounded by gravel. The exit ramp was part of a full cloverleaf interchange at County Line Road.

The parties stipulated that the exit ramp from Interstate 55 to County Line Road was under maintenance jurisdiction of the State of Illinois. County Line Road itself was not under the jurisdiction of the State, but rather was maintained by the County.

Road conditions were clear and dry, and the exit ramp was well illuminated.

As the deceased reached the top of the exit ramp, near its intersection with County Line Road, his motorcycle fell to the pavement. Another motorcycle rider and his passenger, who had been following about 50 yards behind the deceased, testified that they saw sparks near the top of the exit ramp where Wagner fell, and that when they reached the top of the ramp they found him lying on County Line Road near his fallen motorcycle.

Wagner suffered severe head injuries in the accident and the parties have stipulated that those injuries resulted in his death on August 25. The disputed issues are whether Claimant's death was proximately caused by the negligence of the State, and whether the accident actually occurred on that portion of the exit ramp which was under the control of the State.

Officer John Hallock, Jr. was the police officer first called to the scene of the accident. Hallock said that he found an accumulation of gravel near the point of the merger of County Line Road with the exit ramp. He also said that there was construction taking place on the exit ramp during the week prior to the accident, involving replacement of the gravel outside the shoulders of the exit ramp. He was unclear as to exactly when the construction occurred, but was sure that it was "at least several days" before the accident.

Hallock said he observed gravel at the top of the ramp, but that there was no gravel on County Line Road itself. He said there was a "significant amount" of gravel "completely across" the paved portion of the exit ramp near the intersection with County Line road. He said it did not appear possible for a motorcycle to avoid the gravel as it entered County Line Road. Hallock said that the gravel was clearly visible to him and

that he did not observe any skid marks at the accident scene.

John Andrews, a consulting mechanical engineer called as an expert witness by Claimant, testified that it was his opinion that the accident was caused by the accumulation of gravel on the roadway.

Eugene Nosal was the driver of the motorcycle which was following the deceased, and Kenneth Bailek was his passenger. Neither was in a position to actually observe the deceased fall from his motorcycle, and both said that they merely observed sparks at the top of the exit ramp, and that it would not have been possible for Wagner's motorcycle to avoid the gravel as it entered County Line Road. Bailek said he also observed dark patches on the pavement, which might have been oil slicks.

Eugene Nosal also said he observed gravel on the exit ramp. He testified that he observed construction on County Line Road about 50 yards from the intersection with the exit ramp, and that there was also gravel on County Line Road near the construction site.

Joseph J. Kostur, Jr., the Regional Safety Claims Administrator of the Department of Transportation, was called as witness by Respondent. Kostur said he had searched the records of his office, and was unable to find any contracts or awards let for construction on the County Line Road exit ramp on or about the time of the accident. Nor did Kostur find any maintenance records reflecting repair work on the ramp at the time. However, on cross-examination Kostur said that he would not necessarily be aware of a small patching operation on the exit ramp.

Bernard A. Wagner was 32 years old at the time of

his death. He was married, and had two children. It appears that he had a close relationship with his family, particularly with a son who suffers from muscular dystrophy.

The deceased had been steadily employed prior to his death by the Ford Motor Company as a metal finisher, earning approximately $8,500.00 per year. In addition, he worked part time as a motorcycle salesman on a commission basis.

It is the State's position that Claimant has failed to establish that it was negligent in maintaining the exit ramp in question; that Claimant has failed to establish that the accident occurred on the exit ramp, as opposed to County Line Road itself; and that Claimant has failed to establish that Bernard Wagner was free of contributory negligence.

It is axiomatic that the State is not an insurer of the safety of all persons who travel roadways under its jurisdiction and control. Rather, the State is held to a standard of reasonable care in maintaining those roads. *Bloom v. State, 22 Ill.Ct.Cl. 582; Meygandt v. State 22 Ill.Ct.Cl. 498.* In order to recover in this action, Claimant bears the burden of proving by a preponderance of the evidence that Respondent breached this duty; that the State's breach was the proximate cause of the death of Bernard Wagner; and that Bernard Wagner was in the exercise of reasonable care for his own safety at the time of the accident. *McNary v. State, 22 Ill.Ct.Cl. 328.*

Claimant has established that there was a quantity of gravel on the exit ramp from I-55 at the point where the deceased fell from his motorcycle. All of the witnesses who were at the scene agreed on that point. However, we find there is an absence of proof as to how

long that gravel remained on the roadway prior to the accident. The only testimony bearing on this point was that of Officer Hallock, who said that he had observed construction on the exit ramp during the week prior to the accident; but neither Officer Hallock nor any other witness testified to having seen the gravel on the roadway prior to the day of the accident.

The State may be charged with constructive notice of a dangerous condition when, from all the circumstances of a case, it is determined that Respondent should have been aware of the existence of a condition in the exercise of due diligence. *Joyner v. State, 22 Ill.Ct.Cl. 213, 217.* Here there was no testimony as to the length of time the gravel had laid on the roadway, and thus no evidence upon which we can charge the State with constructive notice of its existence.

Nor has the Claimant established that the State had actual notice of the existence of the gravel. Claimant contends that there is proof that the gravel originated with construction work performed by the State on the exit ramp. Again Claimant relies on the testimony of Officer Hallock, who said that "at least several days before the accident" he saw the State patching the gravel outside the shoulder of the exit ramp. Hallock offered no testimony that the State's construction resulted in the gravel at the accident scene, and there is ample evidence in the record from which the Court can conclude that the gravel originated from another source.

Eugene Nosal, the operator of the motorcycle which followed the deceased, said that on the night of the accident he observed construction work on County Line Road about 50 feet from the exit ramp. Nosal said that he examined the construction area and found that

the ground was covered with gravel, which extended to the exit ramp from Interstate 55.

Given Nosal's testimony, the Court is unable to conclude that Claimant has established by a preponderance of the evidence that the gravel on the exit ramp originated with the construction on the ramp, as opposed to the construction on County Line Road, which was not under the control of the State.

This was an extremely unfortunate accident, and the Court has accordingly carefully scrutinized the record. We must conclude, however, that Claimant has failed to establish the negligence of the State, and this claim must accordingly be denied.