(No. 82-CC-0356 ▮▮▮▮▮▮▮▮)

JOYCE A. WILSON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 24, 1994.*

COPPING AND CARTER, for Claimant.

ROLAND W. BURRIS, Attorney General (JIM MAJORS, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

This claim arises out of an accident which occurred on a State highway, Route 100 at Otter Creek Bridge. On December 28, 1980, at approximately 7:00 p.m., Mrs. Wilson was traveling northbound on Route 100 after leaving her place of business. She had consumed two alcoholic drinks before leaving work. At the time of the accident, Mrs. Wilson was familiar with the route, having traveled it for a period of five years. Route 100 was a two-lane highway with a 55 mile per hour speed limit.

Otter Creek Bridge lies immediately north of the intersection of Rosedale Township Road and State Route 100. Upon approaching this intersection, Mrs. Wilson noticed two cars passing one another. They occupied both lanes of Route 100. Mrs. Wilson pulled off onto the shoulder at the intersection with Rosedale Township Road to avoid a possible collision. Her car went over a deep pothole. She lost control of her vehicle, entered onto Route 100, and struck the bridge abutment. Neither of the approaching cars stopped.

The pothole in question was 64 feet from the south end of Otter Creek Bridge and three feet from the edge of Route 100. It was in the right turning radius of the intersection for Rosedale Township Road. The pothole was five feet wide and approximately ten inches deep.

The pothole was in an area which was clearly on the shoulder of State Route 100, and part of the State right-of-way. It was also clearly in the turning radius of Rosedale Township Road.

The Illinois Department of Transportation has an administrative memorandum No. 17 which would tend to establish that they did not have maintenance responsibility over the area in question. They argue that the maintenance of the intersection was the responsibility of Rosedale Township and not them.

In order for Mrs. Wilson to prevail on her claim, she must prove, by a preponderance of the evidence, that the State breached its duty to use reasonable care in maintaining the shoulder of Route 100, that the negligence was the proximate cause of her injuries, and that the State had actual and constructive notice of the pothole in question.

At the trial of this case, Douglas Miller testified that he had used the area involving the intersection frequently. His father lived in Rosedale. He indicated that the pothole in question was ten inches deep, five feet wide, and had been in existence for more than one year. That evidence was uncontradicted and is sufficient to establish constructive notice.

The Respondent argued that the State had no duty to maintain the road in question. This Court has held in *Welch v. State* (1966), 25 Ill. Ct. Cl. 270, that the State has a duty of reasonable care, which extends to maintenance of the shoulders of roadways, for the uses for which they are reasonably intended. In this case, the area in question would clearly be an area where both Rosedale Township and the State of Illinois would have some duty to maintain the area and fix the pothole. In *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213,

the supreme court of Illinois stated that the governmental unit which controls the roadway has a duty to warn motorists of hazards adjacent to the roadway, even if the hazard itself is not within control of the governmental unit. The State clearly had constructive notice of this hazard and did not warn motorists of the hazard. In addition, they did not repair it.

Clearly Mrs. Wilson used the shoulder for its intended purposes. She pulled off the highway in order to avoid a collision and hit the pothole. In addition, Joseph Ponce, a maintenance field engineer for the Illinois Department of Transportation, testified that "* * * if the road crew is there, they have instructions to make any repairs to the immediate edge of the highway even if it's in the intersection itself." Of course, this would not establish a duty to repair the pothole, even if the maintenance crew had instructions to repair it if seen. We, however, hold that the existence of a pothole of this magnitude, within three feet of a paved highway and in existence for over one year, clearly creates a duty of the State to either repair it, or to arrange with the other jurisdiction for its repair. It was also clearly established in this case that the State did not have any formal or informal agreement with Rosedale Township as to the maintenance of the intersection area. The State's administrative memorandum stating that it did not have responsibility is simply insufficient to clearly establish that they do not have responsibility.

Clearly the pothole in question was a proximate cause of the injuries. It may not have been the sole proximate cause, but it is sufficient that it was a proximate cause of her injuries. Had there been no cars, there would have been no reason for her to leave the road. However, had there been no pothole, she would have been able to leave the road safely.

The Respondent never raised any issue of contributory or comparative fault. It is true that Mrs. Wilson had two alcoholic drinks before proceeding on the highway. However, there was no evidence that she was intoxicated or that the alcohol contributed to the accident in any way. Therefore, we find that the Claimant was not guilty of any contributory or comparative fault.

The most interesting theory of the State is that the Claimant failed to exhaust all other remedies and sources of recovery pursuant to section 25 of the Court of Claims Act (705 ILCS 505/25). We find that the Claimant did, in fact, fail to exhaust her other remedies. However, the Respondent did not plead the failure to exhaust remedies as a defense. Indeed, the Respondent did not even bring the matter before the Court until the brief filed after the trial. Although the Respondent asked some questions of the Claimant and other witnesses at the trial which would tend to establish this defense, they never attempted to raise it formally until the brief. We hold that the failure to raise the defense of the Claimant's failure to exhaust other remedies is non-jurisdictional. If it is not raised prior to trial, it is waived. This makes it specifically different than the failure to raise the defense of the statute of limitations or the defense that the Claimant failed to file a timely or adequate notice of intent to sue. These are clearly jurisdictional. The failure to exhaust remedies is not jurisdictional.

In recent years, this Court has decided two similar cases. In *Siefert v. State* (1989), 42 Ill. Ct. Cl. 8, the Court held that the State had a duty to maintain the shoulders of its highways in a reasonably safe manner. The Court reached a similar result in *Sallee v. State* (1990), 42 Ill. Ct. Cl. 41, in which we made an award because the State failed to warn of water on the highway even though it had notice of the defect in question.

The most difficult issue regarding liability is the fact that the pothole in question falls in the turning radius of a road intersection. Rosedale Township has responsibility for its road, and the State of Illinois has responsibility for the highway. If the pothole in question had been directly in the Rosedale Township Road, we might have reached a different result. However, since the pothole is in the turning radius, we find it to be an area where both the State and Rosedale Township had responsibilities. Therefore, for the reasons stated above, we find liability and now turn to the question of damages.

Testimony in this case established that as a result of the accident, Mrs. Wilson had a broken left wrist, facial lacerations, facial damage, a fracture of the bone of the right cheek, permanent loss of sight in her right eye, a dislocated hip, torn ligaments in her right knee, a broken rib, and shattered nose. She was hospitalized for seven weeks following the accident, and she underwent therapy for six weeks after her release from the hospital. She has a permanent three-inch scar underneath her right eye. There are also visible scars on the bridge of her nose next to the inside portion of her eyes. There is also a scar on the bridge of her nose that is a quarter circle about two inches long. The blindness in her right eye is permanent. Obviously, she had considerable pain and discomfort.

Although the Claimant had medical insurance to pay most of her bills, we have previously held, in the *Sallee* case cited above, that the collateral source rule is not abrogated by section 26 of the Court of Claims Act. We also ruled that this holding would be applied prospectively to all claims pending at the time of this decision. It appears that medical bills at the time of the trial in this case were approximately $25,170.87. In addition, there were travel and meal expenses of $672.63. The property

loss was proved at $3,240. There were consequential services rendered by Mrs. Wilson's mother-in-law to help after she was injured in the amount of $2,167.60. In addition, there was lost time and wages from work totaling $2,673. These total $33,924.10. After factoring in the disability and the pain and suffering, we are going to award the Claimant the sum of seventy-five thousand dollars ($75,000).