(No. 91-CC-1082–)

McKinley Dennis, Claimant, *v.* The State of Illinois, Department of Transportation, Respondent.

*Opinion filed June 29, 1998.*

*Order filed October 15, 1998.*

Karlin & Fisher (Charles V. Falkenberg III, of counsel), for Claimant.

Jim Ryan, Attorney General (Vanessa V. Clohessy, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This matter comes before this Court on Claimant McKinley Dennis' complaint against Respondent, State of Illinois, Department of Transportation. The complaint alleges a breach of Respondent's duty to maintain its roadways, and seeks damages for resulting personal injuries suffered by Claimant in the amount of $100,000.

On July 15, 1989, Claimant, McKinley Dennis was injured when his motorcycle slid out from under·him as he encountered gravel in the roadway on the ramp leading from northwest-bound I-55, leading to I-294 northbound. He testified that, as he exited the highway, he reduced his speed to 25 to 30 m.p.h. The speed limit on the ramp was 20 m.p.h. As he executed the first turn on the ramp, his motorcycle slid on loose gravel in the roadway. He described the gravel as a small, dark, pebbly substance. Claimant was removed from the scene of the incident on a stretcher with a neckbrace and IV, and transported to the hospital.

The parties stipulated that all the medical records would be admitted into evidence, and that all the injuries and treatments referred to in the records were related to the subject accident. The medical bills, as contained in Claimant's exhibit no. 3, totaled $5,226.10.

Claimant testified that, as a result of the accident, he suffered excruciating pain in his left shoulder, right thumb, fingers, leg and arm. Claimant's shoulder and thumb bones were displaced and were reset. Surgery was performed on his thumb to remove bone chips, and to wire the thumb bone together. A cast was applied to his hand, and his arm and shoulder were in a harness for five weeks. Claimant underwent rehabilitative therapy for seven months.

Claimant's physician ordered him off work from July 17, 1989, to March 26, 1990. Claimant made one unsuccessful attempt to return to work, in December of 1989, for three days. Claimant calculated his lost wages at $17,837.75. Claimant also testified to a permanent scar on his thumb, and that he continues to feel pain in his thumb and shoulder, and experiences restricted motion in his shoulder.

The Respondent, State of Illinois, admitted that the location of the accident was under the jurisdiction of the State of Illinois, Department of Transportation. (Claimant's exhibit no. 13). Further, Respondent acknowledged that there were no permits by outside agencies to do work in the subject area for the two weeks prior to this incident.

Claimant's witness, Edward Alexander, a motorcyclist traveling behind McKinley Dennis, testified that he observed gravel scattered across the roadway. (Alexander is Mr. Dennis' friend of some 15 years). He testified that Claimant's motorcycle slid on the gravel. Alexander described the gravel as "little black rocky gravel that they patch holes with." From a photo taken a few days after the accident, Alexander identified dark rocks on the shoulder as having been in the roadway at the time of the accident. (Claimant's exhibit no. 4). He identified the area along the edge of the roadway as a patched pothole.

Illinois State Trooper Greg Anderson testified that motorcycles are legally entitled to operate on the subject roadway. Upon investigation of the accident scene, Anderson observed loose gravel in the roadway and identified it as a "road defect" in his report. He also noted "driver's distractions and attention" as contributory causes of the accident. Trooper Anderson concluded that the loose gravel in the roadway contributed to the accident.

Claimant called IDOT engineering technician, Ken Chlebecki, as an adverse witness. Chlebecki acknowledged IDOT's jurisdiction over the subject roadway and responsibility for pothole filling and stone spreading.

Chlebecki testified that, during the summer months, black asphalt material was used to fill potholes. On July 3, 1989, a State crew had been assigned to the subject ramp, putting down five tons of gravel on the shoulder. (Claimant's exhibit no. 9). In addition, the crew spent two hours filling potholes, but the records are ambiguous as to the specific location of the pothole repair. On June 26, 1989, two hours of pothole repairs were done on the subject ramp, and the crew put down one ton of patching material. On June 23, 1989, an IDOT crew patched the ramp for four hours and put down 1.5 tons of asphalt material.

Chlebecki acknowledged Respondent's responsibility to clean and clear the roadway immediately following maintenance, to insure a safe roadway for the traveling public. In his department report, Chlebecki stated that the asphalt could have been dropped by any truck using the ramp. He testified that, barring an accident, only about one-half a shovel full of gravel should spill on the road during the process of patching a pothole. He testified that IDOT foremen would travel the roadway more than once a week looking for hazards and that, if noticed, they would be rectified.

Referring to Claimant's photo exhibit no. 4, Chlebecki did not believe the darkened area adjacent to the roadway where the accident took place was a patched pothole. He testified that the "dark spot" is not the shape which potholes usually form, and that it would not be a typical location for a pothole.

IDOT employee Lawrence Rizzo worked on a crew engaged in pothole repairs. Rizzo examined the photographs of the scene and testified that the work area adjacent to the roadway appeared to be a recent pothole repair, and that the stones scattered to the right of the pothole appeared to be excess from the repair. (Claimant's exhibit no. 4). He further stated that an IDOT crew would be responsible to remove loose stones following a repair.

### The Law

The law clearly imposes a duty on the Respondent to maintain its streets and highways in a reasonably safe condition for the purposes for which they are intended. (*Blair v. State* (1994), 47 Ill. Ct. Cl. 108, 110.) However, the State is not the insurer of its highways. (*Scroggins v. State* (1991), 43 Ill. Ct. Cl. 225, 226.) The mere presence of a defect in the road does not constitute negligence on the part of the State. See *Palmer v. Northern Illinois University* (1964), 25 Ill. Ct. Cl. 1.

Claimant bears the burden of proving negligence by establishing that the State had actual or constructive notice of a defect which proximately caused the Claimant's injury. (*Cotner v. State* (1987), 40 Ill. Ct. Cl. 71, 72.) Claimant must prove by a preponderance of the evidence that a dangerous condition existed and that the State knew of the condition. *Scarzone v. State* (1990), 43 Ill. Ct. Cl. 207.

The Respondent does not dispute the fact that, on July 15, 1989, Claimant encountered gravel in the roadway,

fell from his motorcycle, and sustained injuries. Respondent admitted their maintenance responsibilities for the subject ramp and acknowledged the potential danger posed by gravel on the roadway.

Therefore, the preliminary issue for the Court's consideration is whether the State had actual or constructive notice of the roadway defect.

Respondent argues that the Claimant has failed to establish actual or constructive notice. Claimant argues that, where the Respondent created the dangerous condition, it cannot use lack of notice as a shield against liability. In support of his position, Claimant cites *Donahoe v. O'Connell's, Inc.*, 13 Ill. 2d 113, 118. In *Donahoe*, plaintiff slipped and fell on an onion ring on defendant's restaurant floor. The Illinois Supreme Court held that, "Where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive." *Donahoe v. O'Connell's, Inc.* at 118.

If the Court adopts the finding in *Donahoe*, the matter becomes a question of fact as to whether the Respondent created or caused the dangerous condition.

The undisputed testimony of Claimant, witness Alexander and Trooper Anderson established that there were black asphalt stones in the roadway on the date of the accident. The stones were consistently described as the type that are used to fill and repair potholes. The Respondent's records and the testimony of IDOT employees established that pothole repairs had been performed on and near the subject ramp on June 23, June 26, and July 3, all preceding the July 15, 1989, incident. Although the exact location of the pothole repairs could not be conclusively determined, IDOT employee Rizzo testified that it appeared from a photograph that a pothole adjacent to

where the accident took place had been recently filled prior to the accident. Further, the Respondent acknowledges that it was solely responsible for maintaining the roadway, and that no outside contracts for repair existed at that time. However, the stones used for repair were light, not dark, in color.

The Respondent argues that the asphalt material could have been dropped by any vehicle using the roadway. Some 12 days passed from the last repair work before the accident on a heavily traveled roadway ramp, without evidence of any other accidents.

The Claimant was unable to establish, by direct evidence, that the State vehicle or workers dropped the asphalt and failed to clean it from the roadway. However, the Illinois Supreme Court has ruled that negligence may be established by direct or circumstantial evidence. *Mort v. Walter* (1983), 98 Ill. 2d 391.

The *Donahoe* case is not controlling herein. The substantial difference in direct control and supervision of premises by the proprietor of a restaurant, and the State, as maintainer of an interstate highway system, make application of the *Donahoe* ruling inapposite. Claimant "suggests" that the State created the hazard complained of, but ignores the fact that, in *Mort*, a witness testified that IDOT actually spilled the gravel which caused a similar accident. Claimant further argued that Respondent failed to provide proof of another explanation for the existence of gravel on the ramp. Claimant bears the burden of proving Respondent's negligence by a preponderance of the evidence. Part of said burden is to prove the existence of a defect for a period of time which would impute notice to Respondent in a case relying upon circumstantial evidence of notice. See *Wagner v. State* (1978), 32 Ill. Ct. Cl. 50; *Immordino v. State* (1995), 47 Ill. Ct. Cl. 78; and *Baker v. State* (1989), 42 Ill. Ct. Cl. 110.

We find Claimant has failed to prove that Respondent caused the condition complained of and that Respondent had notice of said condition.

This cause is hereby denied and dismissed with prejudice.

## ORDER

JANN, J.

This cause comes on to be heard on Petitioner's request for reconsideration of the Court's denial of his claim by opinion, entered June 29, 1998.

Petitioner asserts that the Court misapprehended the weight of circumstantial evidence introduced by Petitioner as to the alleged creation of a hazardous roadway condition by Respondent. We have carefully considered the Petitioner's request and the record herein.

We hereby find:

Petitioner essentially asserts that repetition of circumstantial evidence by several witnesses implies that added weight be given said evidence, and that the burden of proof is then shifted to Respondent to prove said inference untrue. While this proposition may apply to a hypothetical case and fact scenario, we reject its application to the facts herein.

Petitioner asks us to find that Respondent caused the condition complained of, via circumstantial evidence, and to further find that no notice is necessary, as Respondent caused said condition. We can find no case law directly on point to support such a proposition. The cases cited by Petitioner are clearly distinguishable, based on facts of record herein.

Review of our opinion denying this claim indicates that several clarifications are necessary to definitively

state the basis of our findings, and the analysis of evidence of record.

It is undisputed that: Claimant suffered injuries as a result of a motorcycle accident on a ramp leading from Interstate 55 to Interstate 294; Respondent has maintenance responsibility for said ramp; and that Respondent made pothole repairs in the general area of the accident over about a two-week period, approximately two weeks prior to the accident.

The specific facts and testimony of various witnesses are contested. The testimony of State Trooper Anderson, Ken Cheblecki, and Lawrence Rizzo are relied upon by both parties for opposing theories. The evidence as a whole indicated that it was generally agreed that the "gravel," or debris complained of, was consistent with that used by IDOT to patch potholes. Testimony further indicated that Petitioner's photos of the accident scene, taken several days after the incident, depicted a darkened patch at the edge of the traffic lane which extended into the shoulder, which was generally described as consistent in appearance with a road patch. The photos do not show stones on the lane of travel, and there are lighter and darker stones near the "patch."

Claimant and his riding companion asserted that gravel covered the breadth of the ramp. Claimant also alleged that there was a large groove, about 10 to 15 feet long and eight inches wide, in the center of the roadway. These facts were not supported and were directly rebutted.

There was testimony from Trooper Anderson and IDOT employees, Rizzo and Cheblecki, all of whom had long experience of 10 to 32 years in patching and maintenance, as to normal IDOT patching operations. All agreed that small amounts of gravel may be present after

such repairs, but the amount at the accident scene was not in keeping with an IDOT repair. Evidence was also offered that most of the repairs by IDOT were 500 to 600 feet from the accident scene, with white stone (repairs on July 3, 1989, could not be pinpointed as to location.) No evidence was offered to indicate that IDOT failed to follow established department procedures for inspection and repair of the roadway. The record indicates the contrary, in that repairs were done on three occasions in a period of less than one month, and no roadway defects were noted by Trooper Anderson or Dennis' riding companion on the day of the accident. There were also no reported complaints of defects on the ramp in the months of June or July, per IDOT records.

Respondent's witnesses Anderson, Rizzo, and Cheblecki all testified that the ramp in question is heavily traveled, and that, in their experience, privately owned trucks hauling stone spill some of their loads on a fairly regular basis. Trooper Anderson stated that he has observed, and routinely reports, such spillage to IDOT as part of his duties. While Claimant has argued that the circumstantial evidence presented herein is sufficient to impute both causation and notice, we must respectfully disagree. Evidence implied by inference is generally weighed against other probable inferences to establish reasonableness.

There is a general evidentiary rule against inferences of ultimate fact (i.e. causation) based upon inferences, lacking establishment of the first inference by a fact scenario and record supporting a finding that no other reasonable theory could prevail. The seminal rule first adduced in criminal case law required the *exclusion* of all other reasonable inferences to infer an ultimate fact. This

rule was, and is, applied to civil cases with varying degrees of elasticity, based upon the unique facts of a given case. Inference, in current application, focuses upon a test of likelihood of the allegation in excess of probability or preponderance, and is often described as "substantial" or "reasonable certainty." See, *Evidence, Text, Rules, Illustration of Problems*, Graham National Institute for Trial Advocacy; and *Black's Law Dictionary*.

Herein, the test is as to the substantial likelihood of the premise that IDOT dropped the gravel at the locus complained of. We agree that the evidence supports the probability of IDOT having dropped some gravel or fill material on the ramp at some time prior to the incident. However, no presumption is legally mandated, and IDOT's lack of singular use, or control of, the area in question, and the time passing between the last repairs and Claimant's accident on a heavily traveled roadway used by other stone haulers, negates a finding that IDOT was, more probably than not, the source of the gravel at issue. Ergo, we cannot reach the first inference, that Respondent caused the gravel to be at the site.

Lacking said inference of causation, Claimant must then prove that Respondent knew, or should have known, of the hazard, and did not take steps to remedy the hazard in a reasonable or timely manner. (See *Wagner v. State* (1978), 32 Ill. Ct. Cl. 50; *Baker v. State* (1989), 42 Ill. Ct. Cl. 110; and *Immordino v. State* (1995), 47 Ill. Ct. Cl. 78.) Claimant has not proved notice herein, and Respondent's witnesses indicated regular inspection and maintenance by IDOT and the absence of complaints or other accidents for the site in question within at least four weeks of the Claimant's accident. Additionally, the Claimant's photos of the scene, taken two days after the incident, indicated no gravel in the lanes of travel and

very little on the shoulder adjacent thereto, supporting the premise that IDOT's maintenance was diligent in routinely clearing debris.

Claimant's petition asserts that our ruling would require witnesses to testify they actually saw the debris fall from an IDOT truck or shovel to prevail. This is not the standard required, as discussed previously. However, to infer both causation and notice, Claimant must provide more convincing evidence of the Respondent's causation of the alleged hazard, and evidence of failure to maintain or correct said hazard within a reasonable time. (See *Wilson v. State* (1994), 46 Ill. Ct. Cl. 20, 22, wherein the Court imputed constructive notice and discussed similar cases; and *Wall v. State* (1990), 45 Ill. Ct. Cl. 206, 213, finding that Respondent's negligence as to cause may not be predicated upon surmise or conjecture.)

This cause is hereby denied on reconsideration and dismissed with prejudice.